Andrew Levine, Esq. (SBN: 278246)
   levine@braunhagey.com
J. Tobias Rowe, Esq. (SBN: 305596)
   rowe@braunhagey.com
Diane Lu, Esq. (SBN: 305816)
   lu@braunhagey.com
BRAUNHAGEY & BORDEN LLP
220 Sansome Street, Second Floor
San Francisco, CA 94104
Tel. & Fax:  (415) 599-0210

ATTORNEYS FOR PLAINTIFF
FAZE APPAREL, LLC

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| FAZE Apparel, LLC, | Case No. 2:18-cv-02052 RGK (JEMx) |
|        Plaintiff, | **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION** |
|     v. | |
| FaZe Clan, Inc. and Does 1 through 25, inclusive, | [Submitted concurrently with Notice of Motion and Motion, Declaration of Johnny Travis, Declaration of J. Tobias Rowe, and Request for Judicial Notice; [Proposed] Order filed and lodged concurrently herewith pursuant to L.R. 5-4.4.1] |
|        Defendants. | |
| | Date: May 7, 2018 |
| | Time: 9:00 AM |
| | Before the Hon. R. Gary Klausner |

# **TABLE OF CONTENTS**

I.   INTRODUCTION ...................................................................................1

II.  FACTUAL BACKGROUND .................................................................2

    A.   Plaintiff's FAZE® Marks .......................................................3

    B.   The USPTO and TTAB Have Recognized Plaintiff's
       Trademark Rights....................................................................4

        1.   2013: Defendant's "FAZE" Applications Rejected
           by USPTO ......................................................................4

        2.   2016: TTAB Enters Judgment Against Defendant....................4

    C.   Defendant Has Acknowledged Plaintiff's FAZE® Marks
       and Rights.................................................................................5

        1.   2014:  Defendant Ceases Use of "FAZE" on Apparel ..............5

        2.   2016: Defendant Again Retreats from Infringement.................6

        3.   2017: Defendant Has Offered to License the FAZE®
           Marks6

    D.   Defendant's December 2017 Infringement Campaign .........................7

    E.   Defendant's Infringing "FAZE" Goods are Confusing
       Consumers.................................................................................8

    F.   Irreparable Harm Will Continue Without an Injunction.......................9

III. PLAINTIFF IS ENTITLED TO A PRELIMINARY
    INJUNCTION UNDER LANHAM ACT § 34 AND FED R. CIV.
    P. 65 .......................................................................................................9

    A.   Legal Standard ........................................................................10

    B.   FAZE Apparel is Virtually Certain to Prevail on the Merits.............10

        1.   FAZE Apparel Owns Valid, Registered Trademarks...............10

        2.   Beyond Being "Likely," Confusion is Already
           Occurring ......................................................................11

    C.   FAZE Apparel is Suffering Irreparable Harm and Will
       Continue to Suffer Such Harm Absent Injunctive Relief .................18

D.   The Balance of the Equities Tips Overwhelmingly in Favor of Granting a Preliminary Injunction ....................................19

E.   An Injunction Serves the Public Interest ............................................20

F.   The Court Should Waive Any Bond Requirement Under Rule 65 ............................................20

IV.   CONCLUSION ............................................20

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF AUTHORITIES

**CASES**

*2Die4Kourt v. Hillair Capital Mgmt., LLC,*
  692 F. App'x 366 (9th Cir. 2017) ........................................................... 20

*AMF, Inc. v. Sleekcraft Boats,*
  599 F.2d 341 (9th Cir. 1979) ................................................. 11, 15, 17

*B & B Hardware, Inc. v. Hargis Indus., Inc.,*
  135 S. Ct. 1293 (2015) ...................................................................... 12, 13

*Brookfield Commc'ns, Inc. v. W. Coast Entm't Corp.,*
  174 F.3d 1036 (9th Cir. 1999) .......................................................... 11, 12

*CytoSport, Inc. v. Vital Pharm., Inc.,*
  617 F. Supp. 2d 1051 (E.D. Cal.) ............................................................ 18

*Filipino Yellow Pages, Inc. v. Asian Journal Publs., Inc.,*
  198 F.3d 1143 (9th Cir. 1999) ................................................................. 11

*GoTo.com, Inc. v. Walt Disney Co.,*
  202 F.3d 1199 (9th Cir. 2000) .................................................... 14, 15, 16

*Grupo Salinas Inc. v. JR Salinas Wheels & Tires Inc.,*
  No. SACV 16-1923 JVS (KESX), 2016 WL 9277320 (C.D. Cal. Dec. 22, 2016)……………………………………………………………..…18, 20

*Herb Reed Enters., LLC v. Florida Entm't Mgmt., Inc.,*
  736 F.3d 1239 (9th Cir. 2013) ................................................................. 18

*Kendall-Jackson Winery, Ltd. v. E. & J. Gallo Winery,*
  150 F.3d 1042 (9th Cir. 1998) ................................................................. 13

*KP Permanent Make-Up, Inc. v. Lasting Impression, Inc.,*
  543 U.S. 111 (2004) ................................................................................. 10

*Morris v. Jones,*
  329 U.S. 545 (1947) ........................................................................... 12, 13

*Official Airline Guides, Inc. v. Goss*,

  6 F.3d 1385 (9th Cir. 1993) ................................................................. 17

*Pac. Sunwear of California Inc. v. KP Fashion Co.*,

  No. SACV0801141JVSANX, 2009 WL 10670246 (C.D. Cal. Mar. 20, 2009) .... 15,

  17, 18

*Pom Wonderful LLC v. Hubbard*,

  775 F.3d 1118 (9th Cir. 2014) ............................................................ 10

*S. Cal. Darts Ass'n v. S. Cal. Darts Ass'n, Inc.*,

  2012 WL 12881977 ......................................................................... 19

*Two Pesos, Inc. v. Taco Cabana, Inc.*,

  505 U.S. 763 (1992) ........................................................................ 13

**STATUTES**

15 U.S.C. § 1057(b) ............................................................................ 11

15 U.S.C. § 1116(a) ........................................................................... 10

**RULES**

FED R. CIV. P 6510 ............................................................................. 9

Fed R. Civ. P. 65(c) ............................................................................ 20

Federal Rule of Civil Procedure 65(b) ..................................................... 10

MPA ISO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

Plaintiff FAZE Apparel, LLC ("FAZE Apparel" or "Plaintiff") respectfully submits this Memorandum of Points and Authorities in support of its Motion for Preliminary Injunction.

## I.  INTRODUCTION

Plaintiff FAZE Apparel requires injunctive relief to stop the destruction of its distinctive FAZE® brand and trademarks through Defendant FaZe Clan's rapidly escalating infringement.  Despite previously acknowledging Plaintiff's trademark rights, Defendant recently began advertising and selling clothes and accessories that overtly copy and infringe the FAZE® mark to customers nationwide.  Defendant is intentionally misleading consumers, who have begun to confuse Plaintiff's mission-driven, socially conscious FAZE® designs with Defendant's video game team and "FAZE"-branded clothing.  This confusion is already eroding the goodwill that Plaintiff has earned through years of investment and effort.  If allowed to continue, Defendant's nationwide sales blitz will damage the FAZE® brand beyond repair.

Since 2007, Plaintiff has exclusively and continuously used the trademarks "FAZE," "FAZE APPAREL," and "F.A.Z.E." in connection with its acclaimed designer clothing and accessories (collectively, the "FAZE® Marks").  The FAZE® brand has enjoyed rapid growth in sales in recent years, spanning from its flagship store in San Francisco's Mission District to retail outlets in France and Japan, as well as nationwide online distribution in the United States.  In addition to their commercial strength, the FAZE® Marks are inherently distinctive, original marks entitled to a high degree of protection.  As a testament to its strong trademark rights, Plaintiff is the only active registrant with a trademark incorporating the word "FAZE" in International Class 25 for apparel.

Defendant is well aware of Plaintiff's FAZE® Marks yet is willfully tarnishing and infringing them for strategic reasons.  Defendant has been blocked from using and registering its own "FAZE"-centric trademarks because of Plaintiff's FAZE® Marks and registrations.  Defendant has even repeatedly offered to purchase a license

1   to use the FAZE® Marks from Plaintiff (in non-privileged negotiations).  Those

2   negotiations never bore fruit in part due to Defendant's bad faith and more

3   fundamentally due to the incompatibility between the FAZE® brand and Defendant's

4   brand.  Defendant has now decided to simply ignore Plaintiff's trademark rights

5   entirely.  Beginning in mid-December 2017, Defendant launched a nationwide sales

6   campaign of competing "FAZE"-branded clothing items that openly copy and

7   infringe Plaintiff's genuine FAZE® goods (hereinafter the "December 2017

8   Infringement Campaign").  By all indications, Defendant has made a cynical wager

9   that a smaller competitor such as Plaintiff will be unable to defend its brand before it

10  is effectively destroyed in the marketplace.

11      A preliminary injunction is necessary to prevent further irreparable harm to

12  Plaintiff caused by Defendant's intentional infringement. Since Defendant launched

13  its December 2017 Infringement Campaign, consumers have been contacting

14  *Plaintiff* to report being confused and disappointed by Defendant's products and

15  customer service.  Defendant's continued advertising of infringing "FAZE" apparel –

16  including products that imitate the FAZE® Marks to the point of counterfeiting – is

17  destroying Plaintiff's unique brand, which cannot be repaired by monetary damages.

18  Absent a preliminary injunction, the FAZE® Marks and brand will be permanently

19  diminished or destroyed by the time of a final judgment on the merits.

20  **II.    FACTUAL BACKGROUND**

21      FAZE Apparel is a socially conscious men's apparel brand with its flagship

22  store in San Francisco's Mission District. Declaration of Johnny Travis ("Travis

23  Decl.") ¶¶ 2-3, Dkt. 25-2.  FAZE Apparel was born in 2007, when co-founders

24  Johnny Travis and Herbert Gracia joined together to form a socially conscious

25  company bringing high-quality apparel with bold styles.  *Id.* ¶ 2.  Working nights,

26  weekends, and any time that their other full-time jobs allowed back then, Johnny and

27  Herbert invested time, sweat, and savings building FAZE Apparel into what it is

28  today.  *Id.*  FAZE Apparel has since grown beyond its flagship boutique into an

internationally-recognized brand available in stores from Paris to Tokyo. *Id*. ¶ 3.  The FAZE® brand has become known for the distinctive style of its designs on graphic tees, sweatshirts, button-downs, accessories and more.  *Id*.

Plaintiff offered its first FAZE® products for sale in commerce in December 2007.  Travis Decl. ¶ 10, Dkt. 25-2.  In 2008, Plaintiff launched its website, fazeapparel.com, to sell FAZE® products across the United States.  *Id*. ¶ 11.  In 2012, Plaintiff expanded its reach to consumers by offering FAZE® products to large streetwear retailers and opening its flagship store in San Francisco's Mission District. *Id*. ¶¶ 11-12.  Today, Plaintiff sells goods including tee-shirts, sweatshirts, jackets, hats, and a variety of accessories under the FAZE® Marks.  *Id*. ¶¶ 3-4, 7.  FAZE Apparel makes extensive use of the Internet, including social media platforms such as Facebook, Twitter, and Instagram, to connect with its customers and build its brand.  *Id.* ¶¶ 13-14.

**A.   Plaintiff's FAZE® Marks**

Plaintiff has used the FAZE® Marks – including FAZE®, FAZE APPAREL, AND F.A.Z.E.® – continuously and exclusively since 2007 in connection with its acclaimed designer clothing and accessories.  Travis Decl. ¶ 15, Dkt. 25-2.  In addition to common law rights, Plaintiff is the owner of a federal trademark registration for FAZE® (U.S. Reg. No. 4,550,118), as well as a design mark for F.A.Z.E.® (U.S. Reg. No. 3,680,738). *Id.* ¶¶ 17-18, Exs. 2-4, Dkt. 25-4, 25-5, 25-6. Both marks are registered in International Class 25 for use in connection with apparel.  *Id*.  Plaintiff also owns a pending trademark application for FAZE® reflecting its longstanding use of the FAZE® Marks in connection with accessories and other items.  *Id.* ¶ 19, Ex. 5, Dkt. 25-7.

Plaintiff diligently enforces its trademark rights to protect its reputation and goodwill.  *Id.* ¶ 16, Dkt. 25-2.  By virtue of these brand protection efforts, Plaintiff is the undisputed owner of the term "FAZE" in connection with apparel.  *Id.* ¶ 20.

## B.   The USPTO and TTAB Have Recognized Plaintiff's Trademark Rights

Defendant FaZe Clan has long coveted Plaintiff's FAZE® Marks but has been blocked from using or registering its own "FAZE" derivatives by Plaintiff's trademark rights and federal registrations.  The U.S. Patent and Trademark Office ("USPTO") and the Trademark Trial and Appeal Board ("TTAB") have repeatedly rejected Defendant's efforts to register "FAZE CLAN" and similar marks for apparel based on the likelihood of confusion with Plaintiff's registered FAZE® Marks.

### 1.   2013: Defendant's "FAZE" Applications Rejected by USPTO

For instance, in May 2013, Defendant's founder Thomas Oliveira, doing business as "FaZe Clan," applied to register the marks "FAZE" and "FAZE CLAN SNIPING WITH" in Class 25 for clothing (Serial Nos. 85924441 & 85924587). Travis Decl. ¶ 21, Ex. 6, Dkt. 25-8. The USPTO refused both registrations with respect to Class 25, finding that the "FAZE CLAN" marks were confusingly similar to Plaintiff's FAZE® Marks.  *Id.* ¶ 22, Ex. 7, Dkt. 25-9.  Because Defendant failed to respond to either refusal, the USPTO issued notices of abandonment for both applications.  *Id.* ¶ 23, Ex. 8, Dkt. 25-10.

Plaintiff's defense of its rights at the USPTO apparently caught Mr. Oliveira's attention.  On August 28, 2013, days after Defendant's original "FAZE" applications were rejected, Mr. Oliveira posted "f*ck that biting company" on Twitter, in reference to FAZE Apparel.  *Id.* ¶ 47, Ex. 28, Dkt. 25-30.

### 2.   2016: TTAB Enters Judgment Against Defendant

On about July 24, 2013, Defendant (via Mr. Oliveira) applied to register the mark "FAZE CLAN" in connection with International Class 41 for videos and video games and Class 25 for apparel.  Travis Decl. ¶ 24, Ex. 9, Dkt. 25-11.  The USPTO issued an initial refusal as to Class 25, again citing confusion with Plaintiff's FAZE® Marks.  *Id.* ¶ 25, Ex. 10, Dkt. 25-12.  Defendant's application was ultimately published for opposition on or about September 15, 2015.  *Id.* ¶ 26, Dkt. 25-2.

Plaintiff filed an Opposition before the TTAB the following day, objecting to registration in Class 25 for apparel. *Id.*, Ex. 11, Dkt. 25-13.

In its Opposition, Plaintiff alleged that the "FAZE CLAN" mark was likely to be confused with Plaintiff's registered FAZE® Marks with respect to apparel and other goods in Class 25. *Id.* ¶ 27, Ex. 12, Dkt. 25-14. Defendant failed to respond to the Opposition, even after the TTAB unilaterally granted it two 30-day continuances. *Id.* ¶ 28, Ex. 13, Dkt. 25-15. On January 11, 2016, the TTAB entered judgment in favor of FAZE Apparel and against FaZe Clan, sustaining the Opposition. *Id.* ¶ 29, Ex. 14, Dkt. 25-16. The TTAB's judgment bars Defendant from registering "FAZE CLAN" in Class 25.

## C. Defendant Has Acknowledged Plaintiff's FAZE® Marks and Rights

Prior to the December 2017 Infringement Campaign, Plaintiff had successfully enforced its rights in the FAZE® Marks against Defendant. In each instance, Defendant ceased infringing uses of "FAZE" at Plaintiff's demand.

### 1. 2014: Defendant Ceases Use of "FAZE" on Apparel

In 2014, Defendant used the website "fazeclan-apparel.com" to sell apparel and accessories infringing the FAZE word mark. Travis Decl. ¶ 35, Ex. 19, Dkt. 25-21. Defendant sold items featuring the word "FAZE" standing alone and the words "FAZE CLAN" on its site. *Id.* Defendant also sold such products in connection with third-party Electronic Gamers' League ("EGL"). *Id.* ¶ 36, Ex. 20, Dkt. 25-22.

In response to a cease-and-desist letter from Plaintiff, EGL stated that it planned to stop selling "FAZE APPAREL" clothing and accessories. *Id.* ¶¶ 37-38, Exs. 21-22, Dkt. 25-23, 25-24. In turn, Defendant appeared to re-direct customers from its fazeclanstore.com address to a new website, **theredmilitia.com**. *Id.* ¶ 39, Ex. 23, Dkt. 25-25. In place of apparel and accessories bearing the word "FAZE" or words "FAZE Clan," the new site purported to sell merchandise bearing the words "RED MILITIA." *Id.* ¶ 40, Ex. 24, Dkt 25-26.

### 2.   2016: Defendant Again Retreats from Infringement

In 2016, Plaintiff sent additional cease and desist letters to Defendant and EGL and after discovering that Defendant had resumed infringement of the FAZE APPAREL Marks.  Travis Decl. ¶ 41, Dkt. 25-2.  Defendant and EGL had begun using the website fazeclanstore.com to sell infringing apparel using the mark "Faze 2.0 Clothing and Accessories."  *Id.*, Ex. 25, Dkt. 25-27.  Following the letter, Defendant appeared to remove items prominently featuring the terms "FAZE" and "FAZE CLAN" from its online store.  *Id.* ¶ 42, Ex. 26, Dkt. 25-28.  In their place, Defendant sold products featuring its primary "FC" logo:      *Id.*

### 3.   2017: Defendant Has Offered to License the FAZE® Marks

Recognizing Plaintiff's rights in the FAZE® Marks, Defendant has offered to license them from Plaintiff in non-privileged negotiations.  In or around February 2017, a FaZe Clan business manager approached FAZE Apparel to discuss purchasing a license for FaZe Clan to use the FAZE® Marks. Travis Decl. ¶ 43, Dkt. 25-2.  Plaintiff did not license the marks to Defendant.  *Id.*  In part, discussions were not fruitful because Defendant's conduct showed bad faith. *Id.* ¶ 44. More fundamentally, however, Plaintiff has refused because Plaintiff's carefully crafted FAZE® Apparel brand is incompatible with Defendant's brand as a corporate-sponsored video game team.  *Id.*

Shortly after Defendant launched the December 2017 Infringement Campaign, Defendant's counsel sent Plaintiff a letter bearing a stark ultimatum: grant Defendant the right to use "FAZE" or else.  Lackman Decl., Dkt. 11-2 at 5.  Yet despite the letter's posturing and threats of suit, it is effectively a licensing offer in which Defendant would pay Plaintiff $50,000 for the right to use the FAZE® Marks.  *Id.* Even on the precipice of litigation, Defendant continued to acknowledge that Plaintiff's FAZE® Marks and registrations require Defendant to seek permission to use "FAZE" marks on clothing.

### D.    Defendant's December 2017 Infringement Campaign

In December 2017, Defendant suddenly began selling dozens of infringing "FAZE"-branded products on its website at www.fazeclan.com.  Travis Decl. ¶ 45, Dkt. 25-2. The products overtly copy the FAZE® Marks and Plaintiff's FAZE® designs, as shown below:

**Plaintiff's Genuine FAZE® Products (Travis Decl. ¶ 4, Dkt. 25-2)**



**Infringing "FAZE" Products from Defendant's Website (*Id.* ¶ 46)**



Defendant's infringing products mimic Plaintiff's genuine FAZE® goods by copying the FAZE® Mark and even using the same font styles as Plaintiff's designs.

MPA ISO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION



1   There is every indication FaZe Clan's infringement of the

2   FAZE® Marks will continue to escalate.  On January 14, 2018,

3   professional football star JuJu Smith-Schuster (Wide Receiver,

4   Pittsburgh Steelers) wore a custom "FAZE CLAN" jersey on

5   the field before a nationally-televised playoff game against the

6   Jacksonville Jaguars.  Travis Decl. ¶ 55, Dkt. 25-2.

7   After the game, FaZe Clan and Smith-Schuster began

8   jointly advertising the custom "FAZE" jersey to millions of consumers via Twitter.

9   *Id*. ¶ 56, Ex. 34, Dkt. 25-36.  Customers quickly began posting receipts showing their

10  purchases.  *Id*.  Smith-Schuster appears to have become an honorary FaZe Clan team

11  member.

12  Defendant, through its counsel, has refused to cease its infringement or

13  stipulate to a preliminary injunction at Plaintiff's request.  Declaration of J. Tobias

14  Rowe ("Rowe Decl.") ¶¶ 2-3, Ex. 1, Dkt. 25-40.

15  **E.    Defendant's Infringing "FAZE" Goods are Confusing Consumers**

16  Defendant's infringement is already causing confusion in the marketplace.  In

17  a matter of weeks after Defendant launched its December 2017 Infringement

18  Campaign, multiple customers contacted *Plaintiff* to complain about Defendant's

19  merchandise or customer service.  Travis Decl. ¶¶ 57-58, Dkt. 25-2.  In December

20  2017, a customer contacted Plaintiff to ask why his FaZe Clan discount code was not

21  working on Plaintiff's website.  *Id.* ¶ 57, Ex. 30, Dkt. 25-32.  Another customer

22  walked into Plaintiff's store to congratulate them on their collaboration with Juju

23  Smith-Schuster, without realizing that Mr. Smith-Schuster was actually wearing

24  Defendant's clothing in his national TV appearance.  *Id.* ¶ 55, Dkt. 25-2.  Such direct

25  evidence of confusion suggests that far more customers are being confused in the

26  marketplace.

27  In addition to "merely" confusing consumers, Defendant's misbranded

28  products are harming Plaintiff's reputation. In January 2018, a consumer called the

FAZE Apparel store complaining about FaZe Clan's failure to ship a sweatshirt that she ordered. *Id.* ¶ 57. Consumers on the Internet are confused and even assume that Plaintiff is the guilty party. *Id.* ¶ 54, Ex. 33, Dkt. 25-35.  For example, one consumer sent a message to FAZE Apparel on social media asserting: "You not the real FaZe Apparel… you copying." *Id.* ¶ 51, Ex. 31, Dkt. 25-33. These accusations are not only false but also wrongly impugn Plaintiff's integrity. *Id.* ¶ 52, Dkt. 25-2. This unfounded disparagement irreparably harms FAZE Apparel's brand. *Id.* ¶¶ 52, 57-58.

### F.   Irreparable Harm Will Continue Without an Injunction

Defendant has signaled its intent to aggressively expand its copying and infringement of Plaintiff's FAZE® Marks.  The first few months of 2018 have seen Defendant promote its infringing products to millions of followers on its social media accounts. Travis Decl. ¶ 53, Ex. 32, Dkt. 25-34.  Defendant also promoted its infringing "FAZE"-branded shirt in collaboration with Mr. Smith-Schuster to millions of consumers, as discussed above.  *Id.* ¶ 56, Ex. 34, Dkt. 25-36.

As Defendant's infringement escalates, Plaintiff's brand is being irreparably harmed.  Defendant's slick, corporate-sponsored video gaming image is antithetical to Plaintiff's FAZE® brand, with its sophisticated streetwear aesthetic and emphasis on bold, socially-conscious designs.  *Id.* ¶ 44, Dkt. 25-2.  Unless Defendant is enjoined from further infringement, the impact on Plaintiff's brand will be severe at multiple levels, as the meaning of the FAZE® Marks will be thrown into confusion for potential buyers and existing customers alike.

### III.   PLAINTIFF IS ENTITLED TO A PRELIMINARY INJUNCTION UNDER LANHAM ACT § 34 AND FED R. CIV. P. 65

Plaintiff seeks a preliminary injunction to halt Defendant's brazen and intentional infringement of Plaintiff's FAZE® Marks.  Plaintiff faces irreparable harm to its distinctive and valuable brand (or even the destruction of its business) if Defendant is not ordered to stop violating Plaintiff's rights.

### A. Legal Standard

To prevent irreparable harm stemming from trademark infringement, Section 34 of the Lanham Act and Federal Rule of Civil Procedure 65(b) provide the Court with the "power to grant injunctions, according to the principles of equity and upon such terms as the Court may deem reasonable." 15 U.S.C. § 1116(a) (Lanham Act § 34). A moving party is entitled to a preliminary injunction if it establishes that (1) it is likely to succeed on the merits, (2) it will suffer irreparable injury if the relief is denied, (3) the balance of equities tips in its favor, and (4) the relief is in the public interest. *Pom Wonderful LLC v. Hubbard*, 775 F.3d 1118, 1124 (9th Cir. 2014). As demonstrated below, Plaintiff is entitled to a preliminary injunction because it is virtually certain to succeed on the merits and Defendant's willful infringement is causing irreparable harm to Plaintiff's business and brand.

### B. FAZE Apparel is Virtually Certain to Prevail on the Merits

To prevail on its trademark infringement claims, Plaintiff must show: (1) that it owns a valid, protectable trademark and (2) that Defendant's infringing mark is likely to "cause confusion, or to cause mistake, or deceive." *KP Permanent Make-Up, Inc. v. Lasting Impression, Inc.*, 543 U.S. 111, 117 (2004). Defendant's willful copying of the FAZE® Marks is a classic example of infringement under applicable Ninth Circuit precedent. Although only a "likelihood" of success is required for a preliminary injunction, Plaintiff is virtually certain to prevail on the merits.

#### 1. FAZE Apparel Owns Valid, Registered Trademarks

Plaintiff owns longstanding trademark rights in the FAZE® Marks, which it has used in connection with the marketing and sale of its products since 2007. Travis Decl. ¶¶ 17-18, Exs. 2-4, Dkt. 25-4, 25-5, 25-6. Plaintiff owns a federal registration for the word "FAZE" in International Class 25 for apparel, as well as a legally incontestable federal registration for its design mark incorporating the word "F.A.Z.E." *Id.* Recognizing Plaintiff's rights, the USPTO has repeatedly rejected Defendant's applications to register its own similar "FAZE" marks. *Id.* ¶¶ 22, 25, 33.

MPA ISO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

A certificate of registration constitutes "prima facie evidence of the validity of the trademark and of the facts stated in the certificate." 15 U.S.C. § 1057(b). Consequently, Plaintiff's registered FAZE® Marks are presumed valid.  Defendant bears the burden of disproving their validity and enforceability.  *See Filipino Yellow Pages, Inc. v. Asian Journal Publs., Inc.*, 198 F.3d 1143, 1146 (9th Cir. 1999). Plaintiff's federal registrations, as well as its continuous and exclusive use of the FAZE® Marks in commerce, demonstrate that Plaintiff's marks are valid and enforceable.  Accordingly, this factor weighs in favor of a preliminary injunction.

## 2.    Beyond Being "Likely," Confusion is Already Occurring

The "core element" of a trademark infringement claim is the likelihood of consumer confusion. *Brookfield Commc'ns, Inc. v. W. Coast Entm't Corp.*, 174 F.3d 1036, 1053 (9th Cir. 1999).  The Ninth Circuit applies a non-exhaustive list of factors in determining likelihood of consumer confusion: (1) the strength of the mark, (2) the proximity of the goods, (3) the similarity of the marks, (4) evidence of actual confusion, (5) the marketing channels used, (6) the type of goods involved and the degree of care likely to be exercised by the purchaser, (7) the defendant's intent, and (8) the likelihood of expansion of product lines. *AMF, Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348-349 (9th Cir. 1979).   Not all factors will be relevant in every case, and a determination may be made based on only a subset of the factors. *Brookfield Commc'ns,* 174 F.3d at 1053.

As a threshold matter, likelihood of confusion has already been adjudicated in Plaintiff's favor by the U.S. Trademark Trial and Appellate Board. *See infra*.  But even without considering the effect of the TTAB's judgment, confusion between Defendant's infringing "FAZE" goods and Plaintiff's genuine FAZE® products is already occurring.  Although Plaintiff could prevail without proving every single *Sleekcraft* factor, there is abundant evidence that Defendant's infringement is likely to produce confusion under each factor.

### a. The TTAB Has Adjudicated Likelihood of Confusion

Plaintiff has already secured a judgment establishing that its FAZE® Marks and Defendant's "FAZE CLAN" are likely to cause confusion when used on clothing items like the ones at issue. As discussed, Defendant's founder and predecessor-in-interest Thomas Oliveira applied to register the mark "FAZE CLAN" in connection with International Class 41 for videos and video games and Class 25 for apparel. Travis Decl. ¶ 24, Dkt. 25-2. The application included specimens of sweatshirts and other items featuring the "FAZE CLAN" mark. *Id.*, Ex. 9, Dkt. 25-11.

Plaintiff ultimately filed an opposition objecting to Defendant's registration of "FAZE CLAN" in Class 25. *Id.* ¶ 26, Dkt. 25-2. Plaintiff alleged that the "FAZE CLAN" mark as shown was likely to be confused with Plaintiff's registered FAZE® Marks. *Id.* ¶ 27, Ex. 12, Dkt. 25-14. Defendant (via Mr. Oliveira) failed to respond to the Opposition, even after the TTAB granted two 30-day continuances to stave off default. *Id.* ¶ 28, Dkt. 25-2. Defendant thus conceded that its FAZE CLAN mark was confusingly similar to Plaintiff's marks when used in connection with apparel. On January 11, 2016, the TTAB entered judgment in favor of Plaintiff, sustaining the Opposition. *Id.* ¶ 29.

The TTAB's judgment is *res judicata* and constitutes a binding determination that the FAZE® Marks and "FAZE CLAN" are confusingly similar when used as identified in Defendant's application. Judgments by the TTAB are entitled to preclusive effect in appropriate circumstances. *B & B Hardware, Inc. v. Hargis Indus., Inc.*, 135 S. Ct. 1293, 1305–06 (2015) ("So long as the other ordinary elements of issue preclusion are met, when the usages adjudicated by the TTAB are materially the same as those before the district court, issue preclusion should apply."). A default judgment is just as binding as a judgment following trial for purposes of estoppel. *Morris v. Jones*, 329 U.S. 545, 550–51 (1947) ("A judgment of a court having jurisdiction of the parties and of the subject matter operates as res judicata, in the absence of fraud or collusion, even if obtained upon a default.").

All elements of estoppel are met here.  The TTAB's default judgment, entered after Mr. Oliveira received notice and multiple chances to respond, constitutes a binding judgment on the merits.  *See Morris v. Jones*, 329 U.S. at 550.  The issues are the same because Plaintiff's TTAB opposition alleged that "FAZE CLAN" is confusingly similar to FAZE® when used in connection with clothing, including specimens of "FAZE CLAN" sweatshirts like the ones at issue in this action.  *See B&B Hardware*, 135 S. Ct. at 1308 ("If a mark owner uses its mark in ways that are materially the same as the usages included in its registration application, then the TTAB is deciding the same likelihood-of-confusion issue as a district court in infringement litigation").  The parties are in privity because Mr. Oliveira formally assigned the "FAZE CLAN" registration at issue to Defendant.  Travis Decl. ¶ 31, Ex. 16, Dkt. 25-18.  As a result, the TTAB's judgment establishes that Defendant's "FAZE CLAN" mark is confusingly similar to Plaintiff's FAZE® Marks when used on apparel products like the ones at issue here.

### b.   Strength of Marks: The FAZE® Marks Are Strong as a Matter of Law

Turning to the first *Sleekcraft* factor, the FAZE® Marks are inherently distinctive and thus particularly strong.  The strength of a trademark is based on its distinctiveness.  *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 769 (1992).  The distinctiveness spectrum ranges from the weakest generic or descriptive marks, which merely describe the product being sold, to the strongest arbitrary or fanciful marks, which do not inherently describe the product.  *Kendall-Jackson Winery, Ltd. v. E. & J. Gallo Winery,* 150 F.3d 1042, 1047 (9th Cir. 1998).  Arbitrary and fanciful marks are the strongest class of trademarks because "their intrinsic nature serves to identify a particular source of a product," rather than a quality of the product itself.  *Two Pesos*, 505 U.S. at 769.  Such marks "are deemed inherently distinctive and are entitled to protection."  *Id*.

FAZE® is an arbitrary mark invented by Plaintiff and is thus entitled to the highest degree of protection as a matter of law.  The term "FAZE" does not inherently describe the apparel or accessories sold by Plaintiff.  Rather, FAZE® is an original coinage developed by Plaintiff, whose founding credo is "*Fearless and Zealous Everyday*."  Travis Decl. ¶ 5, Dkt. 25-2.  The FAZE® Marks are thus classic arbitrary marks that serve solely as a source identifier for Plaintiff's goods, placing them at the highest level of conceptual strength and distinctiveness.  Plaintiff's already distinctive marks have been strengthened in the marketplace though Plaintiff's substantial investments in promoting its brand and developing high-quality products.  *Id.* ¶ 13.  The strength of Plaintiff's FAZE® Marks accordingly weighs in favor of a preliminary injunction.

### c. Similarity of Goods: The Parties Sell the Same Goods

Confusion is highly likely because Defendant is using imitation "FAZE" marks to sell the same goods that Plaintiff sells under the FAZE® Marks.  Plaintiff has long sold sweatshirts, shirts, and other clothing items under the FAZE® Marks and brand.  Travis Decl. ¶¶ 3-4, 7, Dkt. 25-2.  Since the start of the December 2017 Infringement Campaign, Defendant has begun selling sweatshirts, tee-shirts, and other clothing items copying the FAZE® Marks.  *Id.* ¶¶ 45-46. Defendant's use of infringing "FAZE" marks to sell goods identical to Plaintiff's shows that confusion is highly likely.  Indeed, as described below, Plaintiff already has evidence of actual consumer confusion.  Discovery likely will reveal even more such evidence.

### d. Similarity of Marks: Defendant is Using Exact Copies and Close Imitations of the FAZE® Marks

The marks at issue are either exact copies or virtually identical, establishing a clear likelihood of confusion. A "critical question in the likelihood-of-confusion analysis" is the similarity of the marks at issue. *GoTo.com, Inc. v. Walt Disney Co.*, 202 F.3d 1199, 1205 (9th Cir. 2000). In determining the similarity of marks, courts consider the marks in their entirety and in the marketplace, analyze the sight, sound,

1  and meaning of the marks, and weigh similarities between the marks more heavily

2  than their differences. *Id.* The more similar the marks, the more likely there will be

3  consumer confusion. *Id.* Many of Defendant's "FAZE" products copy the FAZE®

4  Mark verbatim, showing confusion is likely. Travis Decl. ¶ 46, Ex. 27, Dkt. 25-29.

5      Moreover, the fact that the parties are selling the same types of products

6  reduces the quantum of similarity required to support an inference of confusion.

7  When "marks appear on virtually identical products, the degree of similarity

8  necessary to support a conclusion of likely confusion declines." *Pac. Sunwear of*

9  *California Inc. v. KP Fashion Co.*, No. SACV0801141JVSANX, 2009 WL

10  10670246, at *5 (C.D. Cal. Mar. 20, 2009), *aff'd sub nom. Pac. Sunwear of Cal., Inc.*

11  *v. Kira Plastinina Style, Ltd.*, 364 F. App'x 330 (9th Cir. 2010) (finding confusion

12  was likely where both parties' products included women's apparel, jewelry,

13  sunglasses and footwear); *see also Sleekcraft Boats*, 599 F.2d at 350 ("When the

14  public is more likely to make an association between the source of related goods, the

15  less similarity is needed between marks in finding a likelihood of consumer

16  confusion.").  Defendant's infringing "FAZE" goods are likely to cause confusion

17  because Plaintiff already sells the same types of goods under the FAZE® Marks.

18  Accordingly, this factor weighs in favor of the likelihood of confusion.

19          **e.      Evidence of Confusion: Confusion is Already Occurring**

20      Confusion is not just likely, it is already occurring in the marketplace at levels

21  that far exceed the requirements for injunctive relief.  Proof of actual confusion is *not*

22  required to obtain a preliminary injunction, but such evidence is weighed heavily

23  when available.  *KP Fashion Co.*, 2009 WL 10670246, at *4 (citing *Sleekcraft*, 599

24  F.2d at 353) (accepting evidence of online publications incorrectly identifying

25  defendant's apparel as associated with plaintiff's).

26      Plaintiff has already identified evidence of actual confusion among customers

27  in multiple channels – including customers encountering the marks on the internet,

28  on television, and in stores.  Multiple customers have contacted Plaintiff since the

start of the December 2017 Infringement Campaign to complain about *Defendant's* merchandise or customer service.  Travis Decl. ¶ 57, Dkt. 25-2.  Customers have mistaken Defendant's "FAZE" goods for Plaintiff's genuine products as a result of JuJu Smith-Schuster's nationally televised promotion.  *Id*. ¶¶ 55-57.  Consumers have even attacked Plaintiff online based on the erroneous assumption that *Plaintiff* is somehow the infringing party.  *Id*. ¶¶ 51, 54.  This evidence of actual confusion among consumers strongly supports granting a preliminary injunction.

### f.    Marketing Channels Used: Plaintiff and Defendant Use the Same Marketing Channels

Consumers are especially likely to be confused because they are exposed to both Plaintiff's FAZE® brand and Defendant's imitation "FAZE" products through the same marketing channels, including the Internet and social media.  "[T]he Web, as a marketing channel, is particularly susceptible to a likelihood of confusion since . . . it allows for competing marks to be encountered at the same time, on the same screen." *GoTo.com*, 202 F.3d at 1207.  In addition to its retail store, Plaintiff makes extensive use of the Internet and social media for sales and marketing. Travis Decl. ¶¶ 13-14, Dkt. 25-2. Plaintiff advertises and sells its FAZE® merchandise through its website www.fazeapparel.com and social media including Facebook, Twitter, Instagram, and Tumblr.  *Id*.   Defendant likewise operates online, selling infringing products on its website fazeclan.com and promoting such goods through its social media profiles on Twitter, Facebook, YouTube, and Instagram.  *Id*. ¶¶ 46, 53.

The close proximity of the parties in internet marketing channels is clear when customers search for "FAZE Apparel" on Google.  Defendant's website selling infringing "FAZE" products is the very next search result after Plaintiff's site. *Id*. ¶ 59, Ex. 35, Dkt. 25-37. The fact that consumers searching for Plaintiff's FAZE® goods will encounter Defendant's infringing products in close proximity provides strong evidence that confusion is likely.

### g.     Type of Goods: Apparel is Susceptible to Confusion

Confusion is also likely because goods such as clothing and accessories are inherently susceptible to consumer confusion.  That is because they are "relatively inexpensive and less sophisticated" and therefore do not require consumers to exercise much caution during purchase.  *KP Fashion Co.*, 2009 WL 10670246, at *5 ("The likelihood of confusion increases when goods are inexpensive and unsophisticated, and do not require a great deal of precision or care to fulfill their purpose.").  Here, both parties sell apparel and accessories, which are relatively low-priced and do not demand an unusually high degree of care from consumers making purchasing decisions.  Travis Decl. ¶¶ 7, 46, Dkt. 25-2.  Accordingly, there is a heightened likelihood that Defendant's infringing products will produce confusion among unsuspecting shoppers.  This factor thus weighs in Plaintiff's favor.

### h.     Defendant's Intent: Defendant's Infringement is Willful

"When the alleged infringer knowingly adopts a mark similar to another's, reviewing courts presume that the defendant can accomplish his purpose: that is, that the public will be deceived." *Sleekcraft Boats*, 599 F.2d at 354; *see also Official Airline Guides, Inc. v. Goss*, 6 F.3d 1385, 1394 (9th Cir. 1993) (noting that a plaintiff can likely prevail on its trademark infringement claim if it can prove intent).  Here, Defendant has admittedly infringed the FAZE® Marks before.  Travis Decl. ¶¶ 39-43, Dkt. 25-2.  Plaintiff has beaten back Defendant's infringement of the FAZE® Marks on multiple occasions.  In each instance – until recently – Defendant removed infringing apparel and accessories from its online stores.  *Id*.  Indeed, FaZe Clan reached out to FAZE Apparel offering to license its marks just last year.  *Id.* ¶ 43.  Given Defendant's prior acknowledgment of Plaintiff's trademark rights, Defendant's infringement is plainly intentional.

### i.     The Parties' Product Lines Already Conflict

Finally, the expansion of business by either party to compete with the other weighs in favor of finding trademark infringement.  *Sleekcraft Boats*, 599 F.2d at

354; *see also KP Fashion Co.*, 2009 WL 10670246, at *5 (finding this factor weighs in favor of granting preliminary injunction where plaintiff "has already expanded [its] Marks from apparel to perfume, sunglass, jewelry, and footwear").  Here, the parties *already* compete directly in the same channels.  Travis Decl. ¶¶ 7, 46, Dkt. 25-2. Plaintiff sells clothing and accessories and has already expanded its product lines to include items such as bandanas, bags, mugs, phone cases, pins, and patches. *Id.* ¶ 7.  Indeed, Plaintiff plans to further expand its range of offerings to meet customer demand.  *Id.*  Defendant, apparently flush with investment, has stated it intends to expand beyond video game competition into a variety of accessories and other goods.  Lackman Decl., Dkt. 11-2 at 7.  Because the parties' product lines already overlap, confusion is highly likely.  In sum, every single factor under the Ninth Circuit's *Sleekcraft* test shows that confusion is likely and thus weighs in favor of granting a preliminary injunction.

### C.   FAZE Apparel is Suffering Irreparable Harm and Will Continue to Suffer Such Harm Absent Injunctive Relief

A preliminary injunction should issue because Plaintiff will suffer irreparable harm if Defendant's misconduct is not enjoined by this Court. Irreparable harm may be established by evidence of "loss of control over business reputation and damage to goodwill." *Grupo Salinas Inc. v. JR Salinas Wheels & Tires Inc.*, No. SACV 16-1923 JVS (KESX), 2016 WL 9277320, at *6 (C.D. Cal. Dec. 22, 2016) (quoting *Herb Reed Enters., LLC v. Florida Entm't Mgmt., Inc.*, 736 F.3d 1239, 1250 (9th Cir. 2013)) (granting injunction where customers posted online complaints to plaintiff about infringer's products and other evidence showed negative customer experiences and confusion attributable to infringer); *see also CytoSport, Inc. v. Vital Pharm., Inc.*, 617 F. Supp. 2d 1051, 1081 (E.D. Cal.)*, aff'd,* 348 F. App'x 288 (9th Cir. 2009) (finding irreparable harm where infringer "continues to flood the marketplace with its [marked] products and advertising . . . because these activities prevent [plaintiff] from controlling the reputation of its highly recognizable and valuable [] brand").

Plaintiff will be irreparably harmed unless Defendant is ordered to stop violating Plaintiff's rights. As detailed above, customers have already been confused by Defendant's use of the FAZE® Marks. Defendant has also signaled it intends to expand its promotion of infringing goods. Travis Decl. ¶¶ 45-47, 55-56, Dkt. 25-2. Defendant's infringing sales are growing unabated. Unless Defendant is enjoined, customers will continue confusing the companies' products and blaming Plaintiff for Defendant's inferior goods and services, which bear no relation to Plaintiff's brand or ethos. More fundamentally, Plaintiff's FAZE® brand will be swamped in the marketplace as consumers come to associate "FAZE" with Defendant's infringing goods. A preliminary injunction should issue to prevent Plaintiff's brand from being irreparably harmed or even destroyed.

## D. The Balance of the Equities Tips Overwhelmingly in Favor of Granting a Preliminary Injunction

The balance of the equities tips entirely in favor of granting a preliminary injunction. Defendant's intentional campaign to undermine Plaintiff's rights is inflicting serious harm upon the FAZE® brand that Plaintiff has built over more than a decade. By contrast, any supposed hardship that Defendant would suffer as a result of a preliminary injunction is a self-inflicted injury entitled to no weight in the balancing of equities. "Defendants have brought upon themselves any injury that they may suffer from an injunction" because "they are second-comers to the marketplace intentionally trying to trade upon the efforts and goodwill established by Plaintiff" and "had actual knowledge of the similarity between their marks and Plaintiff's Marks." *S. Cal. Darts Ass'n v. S. Cal. Darts Ass'n, Inc.*, 2012 WL 12881977, at *6 (Klausner, J.) (granting motion for preliminary injunction).

Defendant has adopted its founder's "F[*]ck that biting company" attitude toward Plaintiff's trademark rights. It has embarked on a deliberate and well-funded infringement campaign, apparently planned in lockstep with legal counsel. Having made a business decision to infringe the FAZE® Marks, Defendant cannot complain

1   that a preliminary injunction would deprive it of further ill-gotten gains.  Otherwise,
2   Defendant would be rewarded for its cynical campaign to destroy a smaller
3   competitor's brand rather than respect its federally-registered trademark rights.  The
4   balance of equities weighs entirely in Plaintiff's favor.

5   ### E.   An Injunction Serves the Public Interest

6   Finally, an injunction preventing consumer confusion serves the public
7   interest.  "For trademarks, the public interest is the 'right not to be deceived or
8   confused.'" *Grupo Salinas*, 2016 WL 9277320, at *6 (C.D. Cal. Dec. 22, 2016)
9   (citation omitted).  Consumers are already being confused by Defendant's
10  infringement.  An injunction will put a stop to such confusion during the pendency of
11  this litigation.  Accordingly, a preliminary injunction serves the public interest.

12  ### F.   The Court Should Waive Any Bond Requirement Under Rule 65

13  Plaintiff should not be required to post security under Fed R. Civ. P. 65(c)
14  given Defendant's willful misconduct and Plaintiff's likelihood of success on the
15  merits.  *See 2Die4Kourt v. Hillair Capital Mgmt., LLC*, 692 F. App'x 366, 369 (9th
16  Cir. 2017) ("Rule 65(c) invests the district court with discretion as to the amount of
17  security required, if any. […] The likelihood of success on the merits, as found by
18  the district court, tips in favor of a minimal bond or no bond at all.") (citations and
19  internal quotation signals omitted).

20  ## IV.   CONCLUSION

21  For the foregoing reasons, Plaintiff respectfully requests that the Court grant
22  its motion for a preliminary injunction barring further infringement by Defendant.

23

24  Dated:  March 30, 2018                      BRAUNHAGEY & BORDEN LLP

25

26                                              By:   _/s/ Andrew Levine_____
                                                      Andrew Levine

27

                                                *Attorneys for FAZE Apparel, LLC*

28