Eleanor M. Lackman, Esq., No. 298594
*elackman@cdas.com*
COWAN, DeBAETS, ABRAHAMS,
& SHEPPARD LLP
9595 Wilshire Boulevard, Suite 900
Beverly Hills, CA 90212
Telephone: (310) 492-4392
Fax: (310) 492-4394

Attorneys for Defendant
Faze Clan Inc.

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| FAZE Apparel, LLC, a California limited liability company, | ) Case No.: 2:18-cv-02052 RGK (JEMx) ) |
| Plaintiff, | ) **MEMORANDUM OF POINTS** ) **AND AUTHORITIES IN** ) **OPPOSITION TO PLAINTIFF'S** |
| v. | ) **MOTION FOR PRELIMINARY** ) **INJUNCTION** ) |
| FAZE CLAN INC., a Delaware corporation, et al., | ) )  Date: May 7, 2018 )  Time: 9:00 a.m. |
| Defendants. | )  Before the Hon. R. Gary Klausner ) |

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES …...……………………………………….…..iii

PRELIMINARY STATEMENT ..…………………………………………………1

ARGUMENT ……………………………………………………………..…....1

    I.      FA WILL NOT SUFFER IRREPARABLE HARM
            IN THE ABSENCE OF INJUNCTIVE RELIEF …...……………….. 2

          A.    FA's Conclusory Assertions Fail to Establish
               Irreparable Harm …………………………………………………2

          B.    FA's Delay Alone Confirms the Absence of any
               Irreparable Harm ……………………………………………………4

    II.     FA HAS FAILED TO DEMONSTRATE A LIKELIHOOD OF
            SUCCESS ON THE MERITS OF ITS INFRINGEMENT CLAIMS …. 6

    III.    THE BALANCE OF HARDSHIPS WEIGHS STRONGLY
            AGAINST THE ISSUANCE OF AN INJUNCTION …………………16

    IV.    PUBLIC POLICY DISFAVORS THE ISSUANCE OF AN
            INJUNCTION …..………………………………………………... 18

    V.     IF THE COURT GRANTS AN INJUNCTION, FAZE APPAREL
            SHOULD BE REQUIRED TO POST SECURITY ……………………19

CONCLUSION ……………...……………………………………………… 20

# TABLE OF AUTHORITIES

**Cases** **Page(s)**

*2Die4Kourt v. Hillair Capital Mgmt., LLC*,
  692 F. App'x 366 (9th Cir. 2017).............................................................................19

*Alliance for the Wild Rockies v. Cottrell*,
  632 F.3d 1127 (9th Cir. 2011) ................................................................................18

*AMF, Inc. v. Sleekcraft Boats*,
  599 F.2d 341 (9th Cir. 1979) ....................................................................................6

*B&B Hardware, Inc. v. Hargis Indus., Inc.*,
  135 S. Ct. 1293 (2015)..............................................................................................8

*Chronicle Pub. Co. v. Chronicle Pub., Inc.*,
  733 F. Supp. 1371 (N.D. Cal. 1989).........................................................................7

*Credit One Corp. v. Credit One Fin., Inc.*,
  661 F. Supp. 2d 1134 (C.D. Cal. 2009)............................................................*passim*

*Disney Enters., Inc. v. VidAngel, Inc.*,
  224 F. Supp. 3d 957 (C.D. Cal. 2016), *aff'd*, 869 F.3d 848 (9th Cir.
  2017) ......................................................................................................................20

*Equinox Hotel Mgmt., Inc. v. Equinox Holdings, Inc.*,
  No. 17-CV-06393-YGR, 2018 WL 659105 (N.D. Cal. Feb. 1, 2018)......7, 9, 13, 14

*Faze Apparel, LLC v. Faze Clan, Inc.*,
  No. 5:18-cv-00625 (N.D. Cal. 2018).......................................................................18

*Gastroceuticals, LLC v. Diamond Water, LLC*,
  No. CV 13-8073 DMG, 2014 WL 12318803 (C.D. Cal. Jan. 3, 2014) ....................6

*Gatsinaris v. ART Corporate Solutions, Inc.*,
  No. SACV 15-0741-DOC, 2015 WL 3453454
  (C.D. Cal. May 29, 2015) .........................................................................................3

*Glow Indus., Inc. v. Lopez*,
  252 F. Supp. 2d 962 (C.D. Cal. 2002)..............................................................*passim*

*Hanginout, Inc. v. Google, Inc.*,
    54 F. Supp. 3d 1109 (S.D. Cal. 2014) .................................................................. 3, 4

*Herb Reed Enters., LLC v. Fla. Entm't Mgmt., Inc.*,
    736 F.3d 1239 (9th Cir. 2013) ................................................................................ 1, 2

*Lindy Pen Co. v. Bic Pen Corp.*,
    725 F.2d 1240 (9th Cir 1984) ................................................................................. 13

*Matrix Motor Co., Inc. v. Toyota Jidosha Kabushiki Kaisha*,
    290 F. Supp. 2d 1083 (C.D. Cal. 2003) ................................................................. 11

*Moroccanoil, Inc. v. Zotos Int'l, Inc.*,
    230 F. Supp. 3d 1161 (C.D. Cal. 2017) ................................................................. 20

*Network Automation, Inc. v. Advanced Sys. Concepts, Inc.*,
    638 F.3d 1137 (9th Cir. 2011) ................................................................................ 14

*Nintendo of America, Inc. v. Lewis Galoob Tyos, Inc.*,
    16 F.3d 1032 (9th Cir. 1994) .................................................................................. 19

*Oakland Tribune, Inc. v. Chronicle Pub. Co., Inc.*,
    762 F.2d 1374 (9th Cir. 1985) ................................................................................. 5

*One Industries, LLC v. Jim O'Neal Distributing, Inc.*,
    578 F.3d 1154 (9th Cir. 2009) ................................................................................ 12

*Playboy Enters. v. Netscape Commc'ns*,
    55 F. Supp. 2d 1070 (C.D. Cal. 1999), *aff'd* 202 F.3d 278
    (9th Cir. 1999) ........................................................................................................ 4

*Playmakers LLC v. ESPN, Inc.*,
    376 F.3d 894 (9th Cir. 2004) .................................................................................. 16

*Positive Ions, Inc. v. ION Media Networks, Inc.*,
    No. CV 06-4296 ABC, 2007 WL 9701964 (C.D. Cal. Aug. 6, 2007) ..................... 4

*Puma SE v. Forever 21, Inc.*,
    No. CV17-2523 PSG E, 2017 WL 4771003 (C.D. Cal. June 2, 2017) .................... 2

*Robinson v. Delicious Vinyl Records Inc.*,
No. CV 13-4111-CAS, 2013 WL 3983014 (C.D. Cal. Aug. 1, 2013),
*order clarified*, No. CV134111 CAS (PLAx), 2013 WL 12119735
(C.D. Cal. Sept. 24, 2013) ..................................................................... 20

*Sharp Kabushiki Kaisha v. ThinkSharp, Inc.*,
448 F.3d 1368 (Fed. Cir. 2006) ................................................................ 8

*Skechers U.S.A., Inc. v. Vans, Inc.*,
No. CV 07-01703 DSK (PLAx), 2007 WL 4181677
(C.D. Cal. Nov. 20, 2007) ......................................................................... 11

*SolarEdge Techs. Inc. v. Enphase Energy, Inc.*,
No. 17-CV-04047-YGR, 2017 WL 3453378
(N.D. Cal. Aug. 11, 2017) .......................................................................... 3

*Spiraledge, Inc. v. SeaWorld Entm't, Inc.*,
No. 13CV296-WQH-BLM, 2013 WL 3467435
(S.D. Cal. July 9, 2013) ............................................................................. 4

*Stonefire Grill, Inc. v. FGF Brands, Inc.*,
987 F. Supp. 2d 1023 (C.D. Cal. 2013) ................................................... 12

*Surfvivor Media, Inc. v. Survivor Productions*,
406 F.3d 625 (9th Cir. 2005) ..................................................................... 6

*Titaness Light Shop, LLC v. Sunlight Supply, Inc.*,
585 Fed. App'x 390 (9th Cir. 2014) ..................................................... 2, 3

*Wild v. HarperCollins Publishers LLC*,
No. 8:12-CV-01191-JST, 2013 WL 12137684 (C.D. Cal. Jan. 2, 2013) ............... 17

*Williams v. Green Valley RV, Inc.*,
No. 8:15-CV-01010-ODW-MRW, 2015 WL 4694075
(C.D. Cal. Aug. 6, 2015) ............................................................................. 2

*Winter v. Natural Resources Defense Council, Inc.*,
555 U.S. 7 (2008) .................................................................................. 1, 2

*Young v. 3.1 Phillip Lim, LLC*,
No. 8:16-cv-1556-DOC-KES, 2016 WL 6781200
(C.D. Cal. Nov. 16, 2016) .................................................................... 3, 17

1

**Rules and Statutes**

15 U.S.C. § 1114 ................................................................................................ 6

Fed. R. Evid. 408 ........................................................................................ 1, 10

Federal Rule of Civil Procedure 65(c) .......................................................... 19

2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**PRELIMINARY STATEMENT**

After half a decade of awareness of defendant Faze Clan Inc. ("FC"), plaintiff Faze Apparel, LLC ("FA") seeks "emergency" relief to stop the highly successful FaZe Clan eSports team from offering and selling team-based apparel to its fans – even though FC has been doing so for years.  As the basis for its claim, FA identifies just three anecdotal instances of confusion, none of which come from FA customers who mistakenly purchased FC products instead of FA products or vice-versa.  FA covers up its lack of evidence by misrepresenting the facts and the law – including a U.S. Supreme Court decision – and offering mischaracterized descriptions of settlement negotiations in violation of Fed. R. Evid. 408.  FA even says that a group of teenagers adopted its name to rip off the brand of a single-location clothing store in a city on the other side of the country from its founder; such a claim is preposterous.

As detailed below, FA's motion is untimely, FA has not demonstrated irreparable harm, and FC will suffer significant hardship if enjoined.  Further, FA's claims on the merits fail.  Having failed to satisfy all four injunction elements as required, the motion should be denied.

**ARGUMENT**

A preliminary injunction is "an extraordinary remedy never awarded as of right."  *Credit One Corp. v. Credit One Fin., Inc.*, 661 F. Supp. 2d 1134, 1137 (C.D. Cal. 2009) (internal citation removed).  A court should grant such injunction only "upon a clear showing that the plaintiff is entitled to such relief."  *Winter v. Natural Resources Defense Council, Inc.,* 555 U.S. 7, 22 (2008).  FA bears the burden of establishing all four injunction factors: (1) that it is likely to succeed on the merits of its infringement claim; (2) that it is likely to suffer irreparable harm in the absence of preliminary relief; (3) that the balance of equities tips in its favor; and (4) that an injunction is in the public interest.  *See, e.g., Herb Reed Enters., LLC v. Fla. Entm't*

*Mgmt., Inc.*, 736 F.3d 1239, 1247 (9th Cir. 2013); *Glow Indus., Inc. v. Lopez*, 252 F. Supp. 2d 962, 974 (C.D. Cal. 2002). FA has failed to meet its burden with respect to each factor, but should FA fail to meet any single one of the factors, the court need not reach the other factors, and should instead deny the motion without further inquiry. *See Williams v. Green Valley RV, Inc.*, No. 8:15-CV-01010-ODW-MRW, 2015 WL 4694075, *3 (C.D. Cal. Aug. 6, 2015).

## I.   FA WILL NOT SUFFER IRREPARABLE HARM IN THE ABSENCE OF INJUNCTIVE RELIEF

### A. FA's Conclusory Assertions Fail to Establish Irreparable Harm

To establish its entitlement to preliminary injunctive relief, FA must demonstrate "that irreparable injury is *likely* in the absence of an injunction." *Winter*, 555 U.S. at 22 (emphasis in original). A mere "possibility" is insufficient. *Id.* Following the ruling in *Herb Reed*, courts in this Circuit have required that a party seeking a preliminary injunction put forth *actual evidence* of harm. *Herb Reed*, 736 F.3d at 1250 (a finding of reputational harm and damage to goodwill may not be based on "pronouncements [that] are grounded in platitudes rather than evidence"). *See also Puma SE v. Forever 21, Inc.*, No. CV17-2523 PSG E, 2017 WL 4771003, at *3 (C.D. Cal. June 2, 2017). FA's conclusory, speculative allegations of harm fail to satisfy this standard. *Titaness Light Shop, LLC v. Sunlight Supply, Inc.*, 585 Fed. App'x 390, 391 (9th Cir. 2014) (vacating preliminary injunction based on "conclusory" and "speculative" allegations of harm).

FA maintains that it will suffer irreparable harm if an injunction does not issue because "consumers will continue confusing the companies' products," harming FA's reputation and "swamp[ing]" FA's brand "in the marketplace." *See* Plaintiff's Memorandum of Law in Support of its Motion for a Preliminary Injunction, Docket Entry 25-1 ("Br.") at 19. *See also* Declaration of Johnny Travis in Support of

Plaintiff's Motion for a Preliminary Injunction, Docket Entry 25-2 ("Travis Decl."),
¶ 49, ¶ 52, ¶ 58, ¶ 61 (conclusory statements as to damage).  This is insufficient.
Their points merely either (a) restate the likelihood of confusion element, which is a
separate element from irreparable harm, or (b) state the harm in non-concrete and
hypothetical terms without identifying what harm will be done and when, how it is
irreparable, or how any narrowly-tailored injunction will prevent the as-yet-
unspecified harm.  Further, that FA's "reputation *might* be harmed by the marketing of
[FC]'s products [does] not establish that irreparable harm to [FA's] reputation is
*likely*."  *Titaness Light Shop,* 585 Fed. App'x at 391 (emphasis in original).

 FA's unsupported, speculative assertions ultimately fall far short of the specific,
concrete evidence of harm necessary to justify the issuance of an injunction.  *See
Gatsinaris v. ART Corporate Solutions, Inc.*, No. SACV 15-0741-DOC (DFMx), 2015
WL 3453454, at *8 (C.D. Cal. May 29, 2015) ("[C]ourts should be wary of granting
a preliminary injunction based solely on allegations and conclusory affidavits
submitted by plaintiff.") (internal citation omitted).  FA has failed to offer any
concrete evidence that, for instance, it has experienced a decline in customers or
goodwill, or that such decline is likely, as a result of actual costumer confusion.  *See
Hanginout, Inc. v. Google, Inc.*, 54 F. Supp. 3d 1109, 1133 (S.D. Cal. 2014) (denying
motion for preliminary injunction).  Nor has FA demonstrated that any immediate
threatened injury exists.  *See SolarEdge Techs. Inc. v. Enphase Energy, Inc.*, No. 17-
CV-04047-YGR, 2017 WL 3453378, at *6 (N.D. Cal. Aug. 11, 2017).[1]

---

[1] FA asserts that a Google search for "faze apparel" produces a search result
identifying FA, first, and FC, second. Travis Decl., ¶ 59. FA has submitted no
evidence that FC appearing second in this search result has caused FA harm.  *See
Young v. 3.1 Phillip Lim, LLC*, No. SACV161556 DOC (KESx), 2016 WL 6781200,
at *5 (C.D. Cal. Nov. 16, 2016) (rejecting similar argument regarding search results).

**B. FA's Delay Alone Confirms the Absence of any Irreparable Harm**

Even if FA had brought forth the required evidence to substantiate irreparable harm, which it has not, FA's excessive delay invalidates any such irreparable injury, as delay is incompatible with emergency relief such as a preliminary injunction. *See, e.g. Credit One*, 661 F. Supp. at 1141 (citing *E–Systems, Inc. v. Monitek, Inc.,* 720 F.2d 604, 607 (9th Cir. 1983)); *Positive Ions, Inc. v. ION Media Networks, Inc.*, No. CV 06-4296 ABC (FFMx), 2007 WL 9701964, at *9 (C.D. Cal. Aug. 6, 2007) ("Significant delay in applying for injunctive relief in a trademark case tends to neutralize any presumption that infringement alone will cause irreparable harm pending trial…"); *Hanginout, Inc.*, 54 F. Supp. 3d at 1132 (citing cases).

By its own admission, FA first learned of FC's allegedly infringing actions in 2014 – nearly four years ago. Br. at 4. Even if one takes at face value FA's overstated position that the use stopped for a brief period three years ago, that still is insufficient, as courts have found a delay shorter than this time period to weigh against a finding of irreparable harm. *See, e.g., Playboy Enters. v. Netscape Commc'ns*, 55 F. Supp. 2d 1070, 1090 (C.D. Cal. 1999), *aff'd* 202 F.3d 278 (9th Cir. 1999) (five-month delay weighed against a finding of irreparable harm); *Spiraledge, Inc. v. SeaWorld Entm't, Inc.*, No. 13CV296-WQH-BLM, 2013 WL 3467435, at *5 (S.D. Cal. July 9, 2013) (delay of thirteen months too long). FA has delayed seeking an injunction even in connection with this litigation: although FA's original, Northern District of California complaint filed on January 29, 2018 requested a preliminary injunction, FA has not requested any injunctive relief in this case until now, two months after FA filed its complaint. This "sort of delay alone is justification for denial of a preliminary injunction." *Positive Ions, Inc.,* 2017 WL 9701964, at *9.

FA attempts to justify its delay by arguing that it believed its cease and desist letters were effective; that FC adopted a new brand name upon receipt of FA's letters;

and that FC escalated its alleged infringement during what FA calls a "December 2017 Infringement Campaign," but such assertions are neither credible nor true.  Br. at 5-8.  FC has continued to use the FAZE CLAN® Mark continuously since 2010. Declaration of Erik Anderson dated April 16, 2018 ("Anderson Decl."), ¶¶ 2 – 3, 10. FC has used the FAZE CLAN® Mark in connection with apparel, specifically, since February of 2013. *Id.* at ¶ 13. FA's assertions regarding "Red Militia" in 2014, Br. at 5, mischaracterizes FC's use and the role of "Red Militia," which was a development group for FC that provided opportunities for player development. Anderson Decl., ¶¶ 32 – 33.  After receiving a cease and desist letter from FA in 2014, FC briefly ceased online sales of apparel featuring the word "faze," but continued to use the FAZE CLAN name in connection with eSports. *Id.* at ¶¶ 28 – 31. However, by August of 2015, having determined that there was no merit to FA's claims, FC had resumed its online sales of apparel displaying the FAZE CLAN® Mark. *Id.* at ¶ 34.

FA was aware of this: in January and March of 2016, FA sent FC two cease and desist letters, including letters to its business partners – including those who had nothing to do with apparel. *Id.* at ¶¶ 35 - 37, Exs. C & D.  In June of 2016, following this barrage, FC contacted FA to arrange an in-person meeting to see if they could work through FA's claimed issues. *Id.* at ¶¶ 38 – 40. The parties finally met in February of 2017, but their brief settlement discussions did not result in any type of resolution. *Id.* at ¶¶ 41 – 44. With FA's awareness, FC continued selling apparel and accessories displaying the FAZE CLAN® Mark. *Id.* at ¶ 44. FC did not seek to engage in any further settlement discussions with FA. *Id.* at ¶ 45.

Accordingly, FA has not met its burden of demonstrating irreparable harm. Because this is an essential element to obtain injunctive relief, FA's motion should be denied for this reason alone.  *See Oakland Tribune, Inc. v. Chronicle Pub. Co., Inc.*, 762 F.2d 1374, 1377 (9th Cir. 1985) (affirming denial of preliminary injunction based

on plaintiff's failure to demonstrate actual harm and "long delay" in seeking an injunction without assessing plaintiff's likelihood of success on the merits).

## II.    FA HAS FAILED TO DEMONSTRATE A LIKELIHOOD OF SUCCESS ON THE MERITS OF ITS INFRINGEMENT CLAIMS

To prevail on its infringement claims, FA must demonstrate that FC's use of the FAZE CLAN® Mark is likely to cause consumer confusion. *See* 15 U.S.C. § 1114; *Glow Indus.*, 252 F. Supp. 2d at 975. The factors relevant to a likelihood of confusion analysis in this Circuit are: (1) strength of the mark; (2) proximity of the goods; (3) similarity of the marks; (4) evidence of actual confusion; (5) marketing channels used; (6) type of goods and the degree of care likely to be exercised by the purchaser; (7) the defendant's intent in selecting the mark; and (8) the likelihood of expansion of the product line. *AMF, Inc. v. Sleekcraft Boats,* 599 F.2d 341, 348-49 (9th Cir. 1979).

FA's infringement allegations take the form of "reverse" confusion, and therefore the focus of FA's claims is whether consumers "doing business with [FA] might mistakenly believe that they are dealing with [FC]." *See Glow Indus.*, 252 F. Supp. 2d at 976; *see also Gastroceuticals, LLC v. Diamond Water, LLC,* No. CV 13-8073 DMG (AJWx), 2014 WL 12318803, at *3 (C.D. Cal. Jan. 3, 2014) (claims for reverse confusion seek to protect the senior user from losing control over its product's identity in the "'rising tide of publicity associated with the junior mark'") (citation omitted)).  The ultimate question is whether consumers believe that FC is the source of FA's goods.  *Surfvivor Media, Inc. v. Survivor Productions*, 406 F.3d 625, 630 (9th Cir. 2005).

**Actual Confusion.** While a showing of actual confusion among "*significant numbers* of consumers provides strong support for likelihood of confusion," *Credit One*, 661 F. Supp. 2d at 1140 (emphasis in original), and despite its claims that it has an internationally known brand (Br. at 1-3), FA has introduced only limited evidence

of actual confusion: a December 2017 e-mail from a customer attempting to purchase FA merchandise with a FC discount code (Travis Decl., ¶ 50); an unidentified customer noting that he had seen a professional athlete wearing one of FC's t-shirts (*id.*, ¶ 55); and a customer voicemail concerning shipment of a FC sweatshirt she had ordered (*id.*, ¶ 57). FA also references "multiple voice messages in December 2017" from customers seeking to contact FC (*id.*, ¶ 57), but FA does not provide further detail.[2]

FA's "statistically insignificant" examples of confusion "do not provide persuasive proof of a likelihood of confusion." *Credit One,* 661 F. Supp. 2d at 1140. *See also Glow Indus.*, 252 F. Supp. 2d at 999-1000 (two facsimiles from customer and employee notes recording customer comments held "not sufficient to support a general likelihood of confusion finding"). *Compare Chronicle Pub. Co. v. Chronicle Pub., Inc.,* 733 F. Supp. 1371, 1377-78 (N.D. Cal. 1989) (finding "substantial evidence of actual confusion" where plaintiff produced evidence of over 100 instances of consumer confusion). Moreover, FA's evidence of telephone calls and e-mails apparently intended for FC are "more properly characterized as 'misdirected communications' than evidence of actual confusion." *Credit One*, 661 F. Supp. 2d at 1139-40 (internal citation removed).

The failure to identify even more instances of this off-point proof is particularly pronounced in light of FC's popularity: FC has over 3.43 million Twitter followers, and over 4.8 million YouTube subscribers. Anderson Decl., ¶ 15. FA's minimal evidence of confusion is insufficient to establish actual confusion. *See Equinox Hotel Mgmt., Inc. v. Equinox Holdings, Inc.*, No. 17-CV-06393-YGR, 2018 WL 659105, at

---

[2] FA references an Instagram message received on January 4, 2018, accusing FA of "copying" FC. Because the sender of this message was clearly able to differentiate between FA and FC, this message is not an example of consumer confusion. Travis Decl., ¶ 51.

*8 (N.D. Cal. Feb. 1, 2018) ("Plaintiff . . . proffers just eleven incidents from which it claims actual confusion exists despite the fact that defendant announced its intention to expand into the branded-hotel market more than 30 months ago. These sporadic episodes are insufficient to support a finding of actual confusion."). Notably, as FC's brand has enjoyed explosive growth over the past several years, FA's sales and social media presence have not. *See* Anderson Decl., ¶¶ 67 – 68.

To support its claim of actual confusion, FA stoops to misleading the Court, misrepresenting an opposition proceeding before the Trademark Trial and Appeal Board (TTAB). FA concedes that FC's application for registration of FAZE CLAN (No. 86/018,225) for clothing in class 25 was approved for publication by the U.S. Patent and Trademark Office ("USPTO") and ultimately published for opposition. Br. at 4. FA filed a Notice of Opposition on September 16, 2015. Anderson Decl., ¶¶ 20 – 22; 26; Declaration of Joshua B. Sessler dated April 16, 2018 ("Sessler Decl."), ¶ 2, Ex. A. Because FC did not file a response, a default judgment was entered in favor of FA. Anderson Decl., ¶27; Sessler Decl., ¶¶ 3 – 7, Exs. B – F.

FA improperly, and inaccurately, characterizes the entry of default judgment as an "adjudicat[ion]" of its likelihood of confusion claim. Br. at 12. Citing *B&B Hardware, Inc. v. Hargis Indus., Inc.*, 135 S. Ct. 1293 (2015), FA further asserts that the TTAB's judgment is "*res judicata* and constitutes a binding determination" that the FAZE Apparel Marks and FAZE CLAN® Mark are "confusingly similar." *Id.* A simple review of *B&B Hardware* shows that such a statement is not true:  the case expressly states that a decision of the TTAB is binding only "[w]hen an issue of fact or law is *actually litigated*." *B&B Hardware*, 135 S. Ct. at 1303 (emphasis added). The parties did not actually litigate FA's infringement claim before the TTAB. Anderson Decl., ¶27; Sessler Decl., ¶ 7, Ex. F. *See Sharp Kabushiki Kaisha v. ThinkSharp, Inc.*, 448 F.3d 1368, 1372 (Fed. Cir. 2006) (declining to apply res

1  judicata following TTAB default judgment). FA's dishonesty with the Court regarding

2  the TTAB proceeding is telling as to the merits of FA's claim.

3      **FC's Intent in Selecting the Mark.**  In a reverse confusion case, intent plays a

4  less critical role in the likelihood of confusion analysis. *See Equinox Hotel Mgmt.*,

5  2018 WL 659105, at *9. Nonetheless, in an effort to demonize FC with rhetoric, FA

6  puts forth two untenable theories. First, FA implausibly asserts that FC intended to

7  infringe FA's asserted trademark rights when FC adopted its FAZE CLAN® Mark,

8  dramatically portraying itself as the David to FC's Goliath.[3] *See, e.g.,* Br. at 1, 2, 4

9  (FC has "long coveted [FA's] FAZE® Marks), 19 (FC has "embarked on a deliberate

10  and well-funded infringement campaign, apparently planned in lockstep with legal

11  counsel"). This tale is fiction: FC had no knowledge or awareness of FA until an

12  office action issued in connection with FC's first trademark application, and even

13  then, FC's then-22-year-old founder, Thomas Oliveira – operating without legal

14  counsel at the time – did not know what an office action was, or how (or if) to respond

15  to it, including to argue that fan-related apparel is not going to be confused with FA's

16  mark. Anderson Decl., ¶¶ 17 – 19.  In an attempt to demonstrate Oliveira's

17  purportedly sinister motives, FA submits a Tweet from Oliveira, but does not produce

18  the entirety of the original message to which Oliveira was responding. It is not only

19  unclear what Oliveira was responding to, FA also misses the obvious point: Oliveira's

20  Tweet confirms that he believed that FA was "biting," or copying, FC, and that he

21  appeared to be rather upset to learn about it. Anderson Decl., ¶¶ 23 – 25. FA's

22  contention that teenagers (including the Boston-based Oliveira) focused on creating a

23

24  [3] FA also claims that FC's "prior acknowledgment" of FA's "trademark rights"

25  reveals that FC's alleged infringement is "plainly intentional." Br. at 17. This is not

26  only inaccurate (as discussed below), but does not speak to FC's intent in selecting the

27  FAZE CLAN® Mark. Indeed, FA fails to provide any evidence that FC *adopted* its Mark with the intent of infringing FA's asserted rights.

28

1    team to play video games together were trying to rip off a clothing company in San
2    Francisco simply makes no sense; Oliveira (who, at 17, was the oldest of the newly-
3    founded FC team) and his friends simply liked the name "Faze Clan." *Id.* at ¶¶ 3 – 8.
4    Moreover, at the time FC adopted its name, FA was using "faze" only as an acronym,
5    and only in connection with its sunburst design mark; FA did not register its FAZE
6    word mark until years after FC had launched its apparel. Sessler Decl., ¶¶ 8 – 9, Exs.
7    G – H.   Because there is "no indication that [FC] selected its [FAZE CLAN® Mark]
8    with intent to deceive consumers," this factor weighs in favor of FC. *See Credit One,*
9    661 F. Supp. 2d at 1139.

10        Second, in a desperate bid to support its unfounded argument that FC has
11   somehow "acknowledge[d]" FA's rights, FA submits confidential settlement
12   communications to the Court for the very purpose prohibited by Fed. R. Evid. 408. Br.
13   at 6.  Such conduct is not only sanctionable, it does not reflect the nature of the
14   discussions or any "admission."  By reaching out to FA in February of 2017, FC
15   attempted to resolve the parties' dispute, proposing a business solution focused on
16   coexistence. Anderson Decl., ¶ 42.  FC put forth this type of solution because it
17   believes that the FAZE Apparel Marks and FAZE CLAN® Mark are sufficiently
18   distinct, such that coexistence is entirely feasible. *Id.* at ¶ 43.  FA *itself* concedes that
19   the two brands are "incompatible." Travis Decl., ¶ 44; Br. at 6. FC's attempts at an
20   amicable resolution ultimately proved unsuccessful; FA asserts that this is because
21   FC's "conduct showed bad faith" (Br. at 6), but FA puts forth no evidence
22   substantiating this allegation.  FA similarly fails to substantiate its assertion that FC
23   "repeatedly offered to purchase a license" from FA. *Id.* at 1. In fact, FC did not engage
24   in any further efforts to negotiate a resolution. Anderson Decl., ¶ 45.[4]

_____

[4] This knowledge further underscores the significant inaction on the part of FA to do
anything to enforce its rights.

**Strength of the Mark.** FA claims that its FAZE® Apparel Marks are strong simply because they are "inherently distinctive" and "arbitrary." Br. at 13-14. However, even an arbitrary mark "may be classified as weak where there has been extensive third-party use of similar marks on similar goods," as is the case here. *Matrix Motor Co., Inc. v. Toyota Jidosha Kabushiki Kaisha,* 290 F. Supp. 2d 1083, 1091 (C.D. Cal. 2003) (citation omitted); *Glow Indus.*, 252 F. Supp. 2d at 990-92. Multiple third parties have applied for and registered trademarks that are similar. Sessler Decl., ¶¶ 10 – 11, Exs. I – J (application for FAZE BLAC CLOTHING COMPANY in class 25 published and allowed on June 17, 2014); ¶ 12, Ex. K (FAZE II in class 25 registered on June 26, 2007 and coexisting at time that FA filed its F.A.Z.E logo application in 2008). FA disingenuously maintains that it has consistently acted in good faith, yet adopted a brand in 2007 that overlapped almost entirely with an existing registration – a registration that served to initially block registration of FA's FAZE word mark (but not the logo mark that FA was using at the time FC adopted its brand). *Id.* at ¶ 13, Ex. L. Nor did FA apparently oppose the application for registration of FAZE BLAC. *Id.* at ¶ 11, Ex. J. Moreover, multiple similar registrations containing similar-sounding names for clothing in Class 25 coexist on the Registry: PHASE 3 (U.S. Reg. No. 4,855,911); SCOOP PHAZE (U.S. Reg. No. 4,493,645); and BIG PHASE (U.S. Reg No. 3,854,761). *Id.* at ¶¶ 14 – 16, Exs. M – O. Given this crowded field, consumers are unlikely to associate FAZE or PHASE, when used in connection with apparel, with FA. *See, e.g., Skechers U.S.A., Inc. v. Vans, Inc.*, No. CV 07-01703 DSK (PLAx), 2007 WL 4181677, *5 (C.D. Cal. Nov. 20, 2007) (evidence of at least thirteen shoe manufacturers use of a trademark similar to plaintiff's "significantly diminishes the likelihood of confusion").

The commercial weakness of FA's Marks is underscored by FA's limited advertising, sales, and unsolicited press coverage. *See* McCarthy on Trademarks and

Unfair Competition § 11.83 (5th ed.) (a mark may be "relatively weak" if it receives "little publicity through only meager advertising and feeble sales"). FA claims that it is an "international brand" (Travis Decl., ¶ 8), and that the FAZE Apparel Marks have "been strengthened through the company's substantial investments in promoting its brand," (*id.* at ¶ 13), but FA provides no concrete evidence substantiating these assertions (*e.g.*, advertising expenditures, sales records, or consumer surveys). Accordingly, even if the asserted marks are conceptually strong, FA has failed to demonstrate that the marks are commercially strong. This factor therefore weighs in favor of FC. *See One Industries, LLC v. Jim O'Neal Distributing, Inc.*, 578 F.3d 1154, 1164-65 (9th Cir. 2009); *Stonefire Grill, Inc. v. FGF Brands, Inc.*, 987 F. Supp. 2d 1023, 1048-49 (C.D. Cal. 2013).

**<u>Similarity of the Marks.</u>** When comparing two trademarks, the marks "must be considered in their entirety and as they appear in the marketplace." *Credit One*, 661 F. Supp. 2d at 1140. Context is crucial, as the "manner in which . . . products are presented in the marketplace" may "minimize[] the likelihood that consumers will conclude they emanate from the same source." *Glow Indus.*, 252 F. Supp. 2d at 997. FC's merchandise bearing the FAZE CLAN® Mark is sold and advertised for sale in close proximity with FC's team persona. For instance, customers seeking to purchase apparel through FC's website will not only encounter the team name, FAZE CLAN, on every page of the site, but also photographs of members of FC's eSports teams. Anderson Decl., ¶ 54. As a result, consumers are unlikely to be confused as to the source of FC's products.

When examining the similarity of two trademarks, the marks must also be assessed in terms of appearance, sound, and meaning. *Credit One*, 661 F. Supp. 2d at 1140. FA's FAZE® Apparel Marks are distinguishable, both visually, and in terms of meaning and commercial impression, from FC's FAZE CLAN® Mark. While FA uses

"FAZE" as an acronym, standing for "fearless and zealous everyday [*sic*]," Br. at 14, FC uses its Mark to denote FC's team name. Anderson Decl., ¶ 56.  FA's FAZE® Apparel design mark, featuring a yellow sunburst design, is also visually distinguishable from FC's word mark. Furthermore, FC's Mark incorporates an additional term, "clan," and "[c]ourts have found that additional words tip against a finding of confusion." *Equinox Hotel Mgmt.*, 2018 WL 659105, at *7. Indeed, FC owns a trademark registration for FAZE CLAN, the USPTO approved publication of a blanket, unqualified FAZE CLAN application for products including backpacks and tote bags, and the USPTO initially approved two FAZE CLAN applications for a variety of apparel (not even restricted to the eSports team) until FA interfered by filing a Letter of Protest.  Sessler Decl. ¶¶ 17-18, Exs. P – Q.  FC's use of "faze" not only appears in connection with an additional word, but, as noted above, additional symbols and imagery related to FC's eSports teams. Anderson Decl., ¶¶ 54 – 55.  The fact that both FA's word mark and FC's FAZE CLAN® Mark incorporate the word "faze" does not, therefore, support a likelihood of confusion, particularly in light of the vastly different commercial contexts in which the respective Marks appear in the marketplace.  *See Lindy Pen Co. v. Bic Pen Corp.,* 725 F.2d 1240, 1245 (9th Cir 1984) (confusion between even identical marks can be avoided by the context in which the marks are presented).

**Proximity of the Goods.**  FA maintains that its apparel products are identical to FC's (Br. at 14), but "[c]ourts have held that the mere fact that two products…fall within the same general field…does not mean that the two products…are sufficiently similar to create a likelihood of confusion."  *Glow Indus.*, 252 F. Supp. 2d at 993 (citation removed).  In fact, the products sold by FA and FC are significantly different: FA sells "acclaimed designer clothing and accessories" featuring "distinctive" deigns (Br. at 3), very little of which is emblazoned with FAZE. Anderson Decl., ¶ 57;

Sessler Decl., ¶ 19, Ex. R.  In contrast, FC sells team jersey and other fan-type apparel. Anderson Decl., ¶ 52. FA's products are "for people who want to define their own path and pursue their passions." Travis Decl., ¶ 5. FC's customers are exclusively fans of FC's eSports teams. Anderson Decl., ¶ 53.  Even where goods are marketed to the same industry, courts have held that such goods are not related where parties target different types of customers, as is the case here. *See Equinox Hotel Mgmt.*, 2018 WL 659105, at *5.

　　　　**Marketing Channels.** To support a finding of likelihood of confusion, "some degree of overlap must be present" in FA and FC's respective "outlets and customer bases." *Glow Indus., Inc.,* 252 F. Supp. 2d at 1000. FA has failed to establish the requisite minimum amount of overlap, for two separate reasons. First, FA and FC use different marketing and sales channels. FA sells products through its store located in San Francisco and through its website (fazeapparel.com). Br. at 2.  FC sells its merchandise through its website (fazeclan.com) and certain third-party websites. Anderson Decl., ¶ 58. Neither FC's website, nor any of the third-party websites through which it sells, also offer for sale FA products, or any other products that are not related to eSports. *Id.*  FA maintains that both FA and FC sell their products online, but this overlap is of minimal significance, as it is the "rare commercial retailer that [does] not advertise online." *Network Automation, Inc. v. Advanced Sys. Concepts, Inc.*, 638 F.3d 1137, 1151 (9th Cir. 2011). Accordingly, the "shared use of a ubiquitous marketing channel does not shed much light on the likelihood of consumer confusion." *Id.* FC's products are also sold at eSports tournaments and events that are clearly associated with FC and its eSports teams. Anderson Decl., ¶ 59. FA's products are not offered for sale at these eSports events. *Id.* at ¶ 60.  In assessing marketing channel convergence, courts also consider "whether the parties' customer bases overlap." *Equinox Hotel Mgmt.*, 2018 WL 659105, at *8.  As noted, FA and FC sell

to entirely different groups of customers.  Anderson Decl., ¶¶ 61 – 62.  This factor therefore also weighs in favor of FC.

**Degree of Care Exercised by Purchasers.**  FA admits that its customer base and brand are fundamentally different and "incompatible" with FC's. Travis Decl., ¶ 44; Br. at 6.  Per FA, in contrast to FC's "corporate-sponsored video game team," Br. at 8, FA is a "socially conscious company and is committed to being a responsible member of the community."  *Id.* at 2.  FA further asserts that its customers purchase FA's products because of FA's "creative, meaningful designs" and "commitment to community and social awareness." *Id.* at 2, 8.  By FA's own admission, therefore, nobody would ever be a customer of both FA and FC.

Indeed, FC's customers are exclusively fans of FC's eSports teams. Anderson Decl., ¶ 53.  They are not seeking to purchase streetwear apparel – with a socially-conscious focus or otherwise – but are fans, looking to express their support and enthusiasm for FC's teams and players. *Id.* at ¶ 62.  Accordingly, FC's products are marketed specifically to fans of FC's eSports teams; those purchasers are looking for indicia of the team, like a website featuring team players, or team jerseys. *Id.* at ¶ 63. Because FA's website and brick-and-mortar store lack such indicia, FC's customers would not purchase products from FA. *Id.* at ¶ 64.[5] Given the admitted "incompatibility" between FA's and FC's customers, and the inherent degree of care exercised by both FA and FC's customers, this factor also weighs in favor of FC.

**Likelihood of Expansion of Product Lines.** FA mistakenly and

---

[5] Buyers of FC merchandise would be disappointed to mistakenly buy (or be gifted with) apparel that was not associated with FC's eSports teams, much as a Los Angeles Dodgers fan would be disappointed to buy or receive a t-shirt from the New York theatre producers known as "The Dodgers" or Dodger Theatricals.  Of course, this would not happen: customers exercise a significant degree of care and know "F.A.Z.E." streetwear is not the Faze Clan team, and vice-versa.

disingenuously asserts that the parties are direct competitors (Br. at 18), but the types of apparel and accessories offered by FA and FC, respectively, are not identical.  As discussed above (*see* section II, Proximity of the Goods, *supra*), the former is focused on "apparel with bold styles" and "distinctive" designs (*id.* at 2-3), while the latter is focused on eSports and video games.  FA has provided no evidence that it will expand its current product line into FC's eSports market. Similarly, FC has no plans to expand into a general "lifestyle brand" (*see id.* at 2) apart from its team. Anderson Decl., ¶ 65. While FA vaguely asserts that it has "plans to further expand its range of offerings," Br. at 18, a preliminary injunction may not be granted on the basis of speculative plans for expansion and mere conjecture.[6]  Accordingly, this factor weighs in favor of FC. *See Credit One,* 661 F. Supp. 2d at 1139.

## III.   THE BALANCE OF HARDSHIPS WEIGHS STRONGLY AGAINST THE ISSUANCE OF AN INJUNCTION

In light of Faze Clan's significant financial investment in its brand, and the revenue that would be lost if an injunction were to issue, the balance of hardships weighs strongly against the issuance of injunction.  *See Playmakers LLC v. ESPN, Inc.*, 376 F.3d 894, 898 (9th Cir. 2004) (affirming denial of motion for preliminary injunction).  FC has spent years developing and promoting its brand (Anderson Decl., ¶¶ 66 – 70), and stands to lose significant business if it is prohibited from selling apparel and related accessories bearing its name. *Id.* at ¶¶ 71 - 73; Declaration of Justin Kenna dated April 16, 2018 ("Kenna Decl."), ¶¶ 2 – 3. Specifically, an injunction prohibiting FC from selling merchandise supporting its eSports teams would result in as much as $2 million in lost sales during the next six to twelve

---

[6] FA has filed a trademark application apparently in anticipation of litigation, to demonstrate its purported "expansion" and that its products are closer to FC's, but such application falsely claims an old date of first use. *See* Dkt. No. 30.

months. Kenna Decl., ¶¶ 3 – 4. The Court may weigh this loss of business in evaluating the balance of hardships. *See Young v. 3.1 Phillip Lim, LLC*, No. 8:16-cv-1556-DOC-KES, 2016 WL 6781200, at *6 (C.D. Cal. Nov. 16, 2016). The loss of ability to make typical sports-team apparel – such as jerseys, t-shirts, and caps – available to fans reduces opportunities for fan engagement and reduces further support and promotion of the eSports team and its gaming activities. Kenna Decl., ¶¶ 5 – 8; Anderson Decl., ¶ 71.

Nor will the damage to FC ameliorate any injury that FA claims exists. As explained above, FA has not submitted any evidence that actual sales are being diverted from FA to FC. *Young,* 2016 WL 6781200, at *6 (denying motion for preliminary injunction). FA's injuries are merely hypothetical, supported only by conclusory assertions and platitudes concerning harm to its reputation. *See* Section I.A, *supra*. Such speculative, unsubstantiated assertions do not justify the halting of FC's business during the pendency of this case, which will likely be a shorter period of time than FA waited to bring this motion.

Moreover, in cases "in which a party seeks mandatory preliminary relief that goes well beyond maintaining the status quo *pendent lite,* courts should be extremely cautious about issuing a preliminary injunction." *Wild v. HarperCollins Publishers LLC*, No. 8:12-CV-01191-JST (ANx), 2013 WL 12137684, at *3 (C.D. Cal. Jan. 2, 2013) (citation omitted). Requiring FC to, for instance, cease production of merchandise bearing its name (which in-stock merchandise may not be sellable if the injunction turned out to be improvidently granted); redesign its website to remove all references to such products; stop wearing apparel with its team name on it; and redesign apparel and related accessories bearing its name goes well beyond what is necessary to maintain the status quo.

Finally, the balance of equities also favors FC, because FC is unlikely to be

deemed to have infringed FA's FAZE Apparel Marks.  *See Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127 (9th Cir. 2011) (balance of equities and likelihood of success on the merits of a claim are weighed on a sliding scale).  To demonstrate its entitlement to preliminary relief, FA grossly mischaracterizes the merits of its infringement claim, fabricating an "intentional campaign [by FC] to undermine" FA's rights. Br. at 19. FA even claims – without any evidentiary support – that FC's purported "deliberate and well-funded infringement campaign" has been "planned in lockstep with legal counsel."  *Id.*  As discussed in Section II.B, *supra,* FC's teenage founders adopted the FC name without any awareness of FA's trademarks. Anderson Decl., ¶¶ 3 – 7.  FA recounts a sensational tale involving a "cynical campaign to destroy a small competitor" (Br. at 20), but FA's theatrical, hyperbolic characterization finds no support in the record.  Over the past several years, FC's brand has continued to grow organically. *Id.* at ¶¶ 9 – 16, 67.  Rather than disregard FA as a "small competitor," FC has not viewed FA as a competitor at all, as the two exist in entirely separate industries, focused on entirely separate groups of consumers. *Id.* at ¶ 43.  This lack of competition appears to be something with which even FA agrees. *See* Travis Decl., ¶ 44; Br. at 6. Having its relationships repeatedly attacked by the misguided FA, FC even filed a declaratory judgment complaint with this Court.[7] FA cannot use FC's purported bad faith – which is nothing more than a story that FA has concocted for purposes of litigation – to justify the issuance of a preliminary injunction.

## IV.   PUBLIC POLICY DISFAVORS THE ISSUANCE OF AN INJUNCTION

---

[7] FA retaliated with a lawsuit filed in the Northern District of California, which Judge Koh noted FA had improperly filed. *Faze Apparel, LLC v. Faze Clan, Inc.,* No. 5:18-cv-00625 (N.D. Cal. 2018), Docket Entry 15.

FA maintains that preventing consumer confusion is in the public interest. Br. at 20. While this is certainly true generally, FA has failed to establish a likelihood of confusion under the *Sleekcraft* factors, and can identify only three instances of actual consumer confusion, despite the fact that FC has been using its name and the FAZE CLAN® Mark since 2010. Travis Decl., ¶¶ 50, 55, 57; Anderson Decl., ¶¶ 3, 10.  It is not in the public interest to restrain the fair marketing and sale of minimally-related products to protect a brand that has failed to protect itself, particularly when almost no consumer confusion exists.

## V.    IF THE COURT GRANTS AN INJUNCTION, FAZE APPAREL SHOULD BE REQUIRED TO POST SECURITY

Federal Rule of Civil Procedure 65(c) provides that a court "may issue a preliminary injunction . . . only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." *See also Nintendo of America, Inc. v. Lewis Galoob Tyos, Inc.*, 16 F.3d 1032, 1036-1037 (9th Cir. 1994). As noted above, wrongful enjoinment would deprive FC of merchandise revenue and development of its fan base at a crucial stage of the development of the brand. Kenna Decl., ¶¶ 5 – 8. If FC is enjoined from using FAZE CLAN in connection with apparel and related accessories, it stands to lose $2 million over the next six to twelve months. *Id.* at ¶¶ 3 – 4.

FA maintains that it should not be required to post security, citing *2Die4Kourt v. Hillair Capital Mgmt., LLC,* 692 F. App'x 366 (9th Cir. 2017), but that case is easily distinguishable. In *2Die4Kourt,* the parties' trademark licensing agreement contemplated quarterly royalty payments. *Id.* at 368. The licensee conceded that it had never made any royalty payments, yet continued to use the plaintiffs' trademarks. *Id.* In light of plaintiffs' straightforward trademark infringement claim, and its clear

likelihood of success on the merits of such claim, the district court determined that the plaintiffs need not post any bond pursuant to Federal Rule of Civil Procedure 65(c). *Id.* at 369. In contrast, FA's trademark infringement claim is far from straightforward, and FA has failed to demonstrate a likelihood of success on the merits of its claim in any event. Accordingly, requiring FA to post bond in the amount of $2 million is proper. *See, e.g., Moroccanoil, Inc. v. Zotos Int'l, Inc.,* 230 F. Supp. 3d 1161, 1179 (C.D. Cal. 2017) (ordering plaintiff to post $250,000 bond); *Disney Enters., Inc. v. VidAngel, Inc.*, 224 F. Supp. 3d 957, 979 (C.D. Cal. 2016), aff'd, 869 F.3d 848 (9th Cir. 2017) (same); *Robinson v. Delicious Vinyl Records Inc.*, No. CV 13-4111-CAS PLAX, 2013 WL 3983014, at *8 (C.D. Cal. Aug. 1, 2013), *order clarified*, No. CV134111 CAS (PLAx), 2013 WL 12119735 (C.D. Cal. Sept. 24, 2013) (ordering plaintiff to post $50,000 bond).

## **CONCLUSION**

For the reasons stated above, FC respectfully requests that the Court deny FA's motion for a preliminary injunction, along with such other and further relief as the Court may deem just and proper.

Dated:          Beverly Hills, California
               April 16, 2018

Respectfully submitted,

COWAN, DeBAETS, ABRAHAMS
& SHEPPARD LLP

By: s/ Eleanor M. Lackman
Eleanor M. Lackman, Esq., No. 298594
*elackman@cdas.com*

9595 Wilshire Boulevard, Suite 900
Beverly Hills, CA 90212
Telephone: (310) 492-4392
Telefax: (310) 492-4394

*Attorneys for Defendant Faze Clan Inc.*